SHAW v. HORNER ET AL.

1. MINING ASSESSMENTS.

An "assessment," as the term is understood by mining men, is an apportionment among the parties interested of an amount of money necessary, and not on hand, for development or working purposes. It must be made by some one having authority, and each person liable is entitled to notice of the amount allotted against him and of the time and place of payment.

2. FORFEITURE—MINING CONTRACT CONSTRUED.

A forfeiture of an interest in a mining lease transferred in consideration of the transferee's agreement requiring him to pay all assessments against such interest until they shall reach an agreed sum, and providing that when they shall reach that sum he shall have the option to go on as before, or to withdraw from the lease and retransfer the interest, cannot be enforced until the assessments amount to such agreed sum. Before that point is reached, any failure of the transferee to fulfill his covenant imposes only a personal liability.

*Error to the District Court of Lake County.*

Mr. A. T. GUNNELL, for plaintiff in error.

Mr. A. S. WESTON, for defendants in error.

THOMSON, J., delivered the opinion of the court.

On the 13th day of April, 1893, Harry H. Shaw and S. H. Horner entered into an agreement in writing as follows:

"This agreement, made and entered into this thirteenth day of April, A. D. 1893, by and between Harry H. Shaw, of Leadville, Colorado, party of the first part, and Samuel Horner, of Leadville, Colorado, party of the second part, Witnesseth:

"That whereas the said party of the first part now has and holds an undivided one-quarter interest of, in and to a certain lease made, executed and delivered to the Indiana Mining Company by the Wolcott Mining Company, upon certain properties therein more particularly mentioned and described, and which said lease is now being worked through the Wolcott shaft, upon the Wolcott lode mining claim, situate in California mining district, county of Lake and state of Colorado;

"And whereas the said party of the first part is desirous of selling, assigning, transferring for a valuable consideration a part or portion of his said interest in the said lease, and the said party of the second part is desirous of purchasing an undivided part or portion of said first party's interest;

"Now, therefore, in consideration of the premises and in consideration of the mutual promises, covenants and agreements between the parties hereto, the said parties hereto mutually promise and agree as follows, to-wit:

"The said party of the first part agrees to and hereby does sell, assign and set over unto the said second party an undivided one-sixteenth interest of, in and to the said above described lease, which is hereby again referred to and made a part hereof.

"For and in consideration of such assignment the said second party agrees to pay all the costs or assessments which may be due or become due against the said one-quarter interest

including the said one-sixteenth herein sold to said second party and the three-sixteenths still held and owned by the said first party, until the said assessments shall amount to the sum of one thousand dollars ($1000), and when the said assessments shall reach the said amount or sum of one thousand dollars, then the said second party shall and may have his option as follows, to-wit:

"First—To go on and carry the said one-quarter interest, paying all the expenses thereof in consideration of the said one-sixteenth interest; or

"Second—To withdraw from said lease and transfer his said interest therein back to said party of the first part, and in case he does withdraw or cease to pay the assessments against the said one-quarter interest, then this shall be and is a transfer back to the said party of the first part, and said first party may immediately take possession thereof.

"Said second party further agrees to accept and be bound by the terms and conditions in the said lease contained.

"In witness whereof, the said parties hereto have hereunto set their hands and seals the day and year first above written.

"S. H. HORNER,   (Seal)
"(Signed)      HARRY H. SHAW.   (Seal)."

On the 5th day of January, 1894, Shaw brought this action against Horner for the cancellation of the agreement, the revesting in him of the title conveyed to Horner, and an accounting. James W. Newell, who was the manager of the leased property, kept its accounts, and collected and disbursed all moneys in connection with it, was made a party defendant for the purposes of the accounting.

The complaint alleges that under and in pursuance of the agreement, Horner entered into the enjoyment of the lease and participated in its profits; that the proceeds of the property during the month of October, 1893, were not sufficient to pay the costs or assessment for work done upon the property in that month, and that there was a like deficiency in November following, but that Horner refused to pay the

amounts chargeable against the quarter interest as provided in the agreement, except to the extent of one fourth thereof, although requested so to do; and that the three fourths of the assessments, which Horner refused to pay, were paid by Newell out of money in his hands belonging to the plaintiff.

The answer admits the agreement, and entry by Horner into the possession of one sixteenth interest transferred by it, but denies that there was any deficiency in the product of the leased premises, as averred in the complaint, and denies that there was any assessment, or any necessity for an assessment. The proof was that from the time Horner went into possession under the agreement, until the October following, the receipts from the property considerably exceeded the expenses of operating the lease; that dividends were paid, from time to time, to the parties interested, and that after the payment of expenses and dividends from the receipts the manager had on hand a reserve fund, to use, if necessary, in the payment of future expenses. In October and November the total expenses were $2,696.49 in excess of the total receipts for those months, and this sum was paid out of the reserve fund. Both parties agree that so long as the property paid its way there was nothing chargeable against Horner. The occasion of the dispute is the deficiency in October and November. It is contended for the plaintiff that the results of each month's operation of the lease were determinative of the liability or nonliability of Horner for that particular month; and that if there was a deficit in any month, Horner must make one fourth of it good in cash, regardless of the reserve fund in the treasury. On the other side it is maintained that as long as there was sufficient money on hand, derived from the mine, to pay all the operating expenses of the property, there was nothing for Horner to pay.

We are disposed to agree with Horner. Counsel's subdivision of the period referred to into months is purely arbitrary. There is nothing in the agreement to warrant it. A division into days, weeks or years, would be equally proper. We find no authority in the language of the con-

tract for a division at all. As, during the whole period, there were ample funds available for all expenses, and there was no necessity for contribution from individuals, no liability accrued against Horner under the agreement.

But even if the facts had been otherwise, the mere existence of a deficiency would not have given the plaintiff a right of action. Horner's agreement was to pay assessments. An "assessment," as the term is understood by mining men, is an apportionment among the parties interested of an amount of money necessary, and not on hand, for development or working purposes. It must be made by some one having authority in the premises; and each person liable is entitled to notice of the amount allotted against him, and when and where it is payable. There is no pretense here that any assessment was ever made, and it is clear that none was needed.

But the question whether Horner was in default we do not conceive to be important. It has been discussed by counsel, and therefore we have given it some attention; but its decision in the plaintiff's favor would not dispose of the case. Conceding all that is claimed by counsel in respect of the obligation assumed by Horner, and of his liability upon it, still we do not see how this action can be maintained. Horner agreed to pay all assessments coming due against the one quarter interest until they should amount to $1,000. There is nothing but a personal covenant here, and the plaintiff's only remedy for its violation is an action at law against Horner for the amount in default. It is only when the aggregate of the assessments reaches $1,000 that any provision is made for revesting the transferred interest in the plaintiff. Horner may then exercise one of two options: first, to go on as before; or, second, to withdraw from the lease; and if he adopts the latter alternative, either by a formal withdrawal, or a cessation of payments, his interest becomes the property of the plaintiff. It is only after assessments to the amount of $1,000 have accrued that the agreement operates upon the interest itself, or gives the plaintiff any right to a re-transfer. Before that point is reached, any failure of Horner

to fulfill his covenant imposes only a personal liability upon him. Accepting the plaintiff's theory of the case, the total amount for which Horner could in any event be said to be liable was one fourth of $2,696.49, which falls considerably short of $1,000. It follows that this action, in which a cancellation of the agreement and a decree of title in the plaintiff are sought, cannot be maintained, and that the judgment must be affirmed.

*Affirmed.*